IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JAMES JOSEPH BROWN,                        Case No. 3:13-00774-HU

　　　　　　　Petitioner,          FINDINGS AND RECOMMENDATION

　　v.

GARRETT LANEY,

　　　　　　　Respondent.


ANTHONY D. BORNSTEIN
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, OR 97204

　　Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
SAMUEL A. KUBERNICK
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

　　Attorneys for Respondent


HUBEL, Magistrate Judge


1 -- FINDINGS AND RECOMMENDATION

Petitioner, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.   For the reasons set forth below, the petition should be denied.

<u>**BACKGROUND**</u>

On April 28, 2008, petitioner was arrested after selling methamphetamine to a confidential informant.  Resp. Exh. 119 at 33-34 & 73.  At the time of petitioner's arrest, his wallet contained a Shell credit card in the name of Brandy L. O'Brien, and a Citibank Check in the name of Denise Rennick (both of which had been reported stolen).  Resp. Exh. 119 at 27 & 32; Resp. Exh. 128 at 21.  The police subsequently obtained a search warrant for petitioner's home, and seized additional personal identification cards located in/under the headboard in petitioner's bedroom. Resp. Exh. 119 at 65, 83-84 & 92.

Also found in petitioner's home were (1) stolen pay stubs and other documents bearing the name "Eric Lawrence" (as well as his daughter's Social Security card); (2) stereo equipment; (3) an air compressor; (4) a door and key from a neighborhood mail collection box; (5) a notebook in which petitioner had written "To find a credit card that's not good call 1-800-225-5288;" and (6) a copy of the Statesman Journal newspaper from April 2008 with the front page article "Police investigate series of burglaries."  Resp. Exh. 119 & Resp. Exh. 128 at 17-21.  Petitioner reviewed the police reports

2 -- FINDINGS AND RECOMMENDATION

documenting the property located in, and/or seized from, his home and vehicle. Resp. Exh. 119 & Resp. Exh. 128 at 24 & 38-39.

On May 19, 2008, petitioner was indicted for delivery of methamphetamine within 1,000 feet of a school (counts 1 & 3), delivery of methamphetamine (counts 2 & 4-6), possession of MDMA (count 7), identity theft (counts 8-13), and theft in the first and second degrees (counts 14-15). Resp. Exh. 102 (Marion County Case No. 08C-43752). Before trial, the State dropped three of the drug charges. Resp. Exh. 116 at 2. Additionally, the State offered to recommend a 92-month sentence in exchange for petitioner's guilty plea. Resp. Exh. 109 at 2, & Resp. Exh. 116 at 2. Petitioner rejected the plea offer. Id.

However, on the morning of trial, petitioner entered a guilty plea to the remaining drug charges (without any concessions from the State), and proceeded to trial on the theft charges. Resp. Exhs. 103 & 105. At trial, petitioner testified that he was not aware of the personal identification cards found in his bedroom and wallet, or the stolen property found in his residence and truck. Resp. Exh. 105 at 200-07 & 212-13; see also Resp. Exh. 128 at 32-33. Petitioner testified that the presence of these items, including the items in his wallet, was the result of the criminal activity of people staying in his home. Resp. Exh. 105 at 227-28 & Resp. Exh. 128 at 32-33. Following a bench trial, petitioner was found guilty of all theft charges, and sentenced to 117 months in

case number 08C-43752, and a combined sentence of 136 months.[1]
Resp. Exhs. 101, 106 & 130 at 3.  The court explained its ruling as
follows:

> Mr. Brown, as I was listening to your testimony, I
> couldn't tell whether I was in a courtroom listening to
> the testimony of someone charged with a crime or reading
> an Alice in Wonderland fairy tale.  I do not find you to
> be credible at all.  Someone who has the criminal history
> that you have involving theft, having been in the
> Department of Corrections twice, having all this property
> in your house, in your bed -- headboard to your bed --
> under the headboard to your bed, under your bed in the
> drawers, printers and check blanks.
>
> You would ask me to turn a blind eye to all of this
> and assume that you're just a victim of all these
> criminal people that moved into your property, and that
> they just left all this property there, sir.  I do not
> believe that.  I believe that if you were not directly
> involved in stealing the property, you certainly aided
> and abetted them by providing a clubhouse, if you will,
> from which they could engage in identity theft.
>
> I, in fact, believe that you engaged in identity
> theft yourself for the reason that you had a stolen check
> in your wallet and I believe you also had a credit card
> in your wallet that belonged to another person.

Resp. Exh. 105 at 253-54.

Petitioner sought state post-conviction relief on the basis
that he received ineffective assistance of counsel.  Petitioner
alleged that trial counsel (1) failed to review with him a compact
disc with approximately 80 photos of evidence seized from

---

[1] In two related cases, petitioner was indicted for possession of methamphetamine (to which he pled guilty), and for Theft in the First Degree and two counts of Identity Theft (which were consolidated for trial with 08C-43752).  Resp. Exh. 103 & Resp. Exh. 105 at 10-11 & 13. Petitioner was convicted of those counts as well.

petitioner's home; and (2) "failed to inform him of the existence of and review with petitioner the various forms of identity; the checks; and the credit cards." Resp. Exh. 109 at 3.

At the state post-conviction proceeding, petitioner's trial counsel, James J. Susee, attested to his interactions with petitioner as follows:

> 5. I provided to petitioner a complete copy of the discovery I had in the case, with the exception of some photographs that were on a CD. Petitioner would provide me with lengthy excerpts from this discovery and include very extensive notes on his thoughts.
>
> 6. I cannot say whether or not I presented Mr. Brown with each and every photograph that I may have viewed in his case as I did not have the facilities to show him the CD pictures that he has referred to. *However, I did show him photographs that represented what was found in his home and in the headboard of his bed.* He adamantly denied knowing anything about any of the items in the photographs or in his home.
>
> 7. I would also admit that there may have been a few photographs that were actually in the District Attorney's Office as opposed to provided to me in the discovery, which I did not view. These pictures of items in the headboard of his bed were discussed with Mr. Brown but his position was simply that everything in the headboard belonged to his bedmate who was a female who had herself been charged with a number of identity thefts.
>
> 8. I discussed those items with him frequently as well as discussing with him the fact that his entire home was full of stolen property; however, he simply blamed that on a male roommate who was also involved in identity theft.
>
> 9. It was almost impossible to keep Mr. Brown on track while dealing with these matters because of his adamant denial of any knowledge of the evidence of the crimes.

10.   I discussed with him on a number of occasions the State's plea offer which he categorically rejected based upon his statements that he had no knowledge with respect to the identity theft items or the stolen property in his home.

* * * * *

12.   * * * I admit that I did not review the CD with approximately 80 photos with him in person.  I did review the photos in my office; however, he is correct that I did not show them all to him personally.  Although I described the content of the photographs to him, petitioner never asked to see the other photographs themselves in order to confirm that which I was telling him.

13.   * * * I did on numerous occasions discuss with him the items that were found in the headboard of his bed. As previously indicated, he denied any knowledge that the items were there and indicated that to the extent they were, they belonged to his bedmate.

14.   I acknowledge that there were items in the District Attorney's Office that I did not personally view . . . . This was an oversight on my part, however, he was so adamant that he had absolutely no knowledge of anything there that would have been indicative of identity theft that I was less concerned as to the particular items.

15.   I had discussed many of the items with him in suggesting that he take the plea offer; however, he continually rejected that.  An example of his positions would be the fact that a door to a community mail box was found in his residence; he even denied knowing that it was very likely stolen.

16.   * * * I essentially confronted him with the clear evidence of guilt that was laying around his apartment and tried to get him to consider taking a plea deal. Petitioner refused to consider doing so, despite the fact that I outlined for him the evidence that was going to be very damaging at trial.  He simply was not willing to negotiate this case.

Resp. Exh. 118.

In response, petitioner submitted a declaration to the state post-conviction court, stating that he would have accepted the prosecution's 92-month plea offer had he been shown the photographs, and been made aware of the various forms of identity, checks, and credit cards found in his home and on his person. Resp. Exh. 110. Additionally, he testified that (1) Attorney Susee was lying when he said that he showed petitioner photographs representative of what was seized from the headboard; (2) the only discussions he had with counsel about the photographic evidence was a 10-minute conversation; (3) Susee never told petitioner that his home was full of stolen property; and (4) Susee advised petitioner to plead *not* guilty because the State could not prove the necessary element of intent. Resp. Exh. 128 at 11-15, 25-26 & 29-30. Finally, petitioner testified that had he been shown the photographs, he would have accepted the State's plea offer. Id. at 16, 20 & 27.

The post-conviction court denied relief based primarily upon its conclusion that petitioner was not credible:

> Even though petitioner didn't see some photos -- no question, he didn't -- the court believes that the attorney told the petitioner of the evidence and urged petitioner to take the deal. Nobody would want to try this case.

> Petitioner had the police report. It details lots and lots of stuff, including the door to the post boxes in plain sight, and based on those police reports, petitioner had a lot of information about what the evidence was going to be against him. At least several

[pieces] of the evidence found were in his wallet, and
that's just real hard to explain away.

   The attorney was not inadequate for not getting
copies made for the petitioner, since he had a
conversation about the overwhelming nature of the
evidence, but I agree, he could have done so easily, and
I find it poor practice, particularly because it made it
-- he indicates that he and Mr. Brown were already having
issues, and clearly he should have gone the extra not
very far [mile] to get copies made from the CD.  I think
that's poor practice, but not sufficient for post-
conviction grounds.

   I do not find him inadequate and I don't find him
prejudicial [sic].  I find insufficient proof of any
inadequacy, of any prejudice.  This case clearly should
not have gone to trial, and I believe the attorney when
he said he tried to convince Mr. Brown that this is not
a triable case.

Resp. Exh. 128 at 42-43.  The Oregon Court of Appeals affirmed,

without opinion, and the Oregon Supreme Court denied review.  <u>Brown</u>

<u>v. Coursey</u>, 251 Or. App. 829, 290 P.3d 20 (2012), <u>rev. denied</u>, 353

Or. 203 (2013).

## <u>STANDARDS</u>

   A petition for writ of habeas corpus, filed by a state

prisoner, shall not be granted with respect to any claim that was

adjudicated on the merits in state court unless the adjudication

resulted in a decision that was "contrary to, or involved an

unreasonable application of, clearly established Federal law"; or

"resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented."  28

U.S.C. § 2254(d)(1) & (2); <u>Harrington v. Richter</u>, 131 S.Ct. 770,

785 (2011).  The petitioner carries the burden of proof.  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).

A state court decision involves an unreasonable application of clearly established Federal law if it correctly identifies the governing legal standard, but unreasonably applies it to the facts of the prisoner's case.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  An unreasonable application of federal law is different from an incorrect application.  <u>Harrington</u>, 131 S.Ct. at 785; <u>White v. Woodall</u>, 134 S.Ct. 1697, 1702 (2014).  Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington</u>, 131 S.Ct. at 786-87 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)); <u>White</u>, 134 S.Ct. at 1706-07; <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013).

## DISCUSSION

In grounds for relief one and two, petitioner alleges that trial counsel was ineffective for failing to review with petitioner a compact disc with approximately 80 photographs of seized evidence, and failed to review with petitioner the various items of personal identity seized.  Petition at 8-10.  Petitioner argues that this evidence was critical to an informed decision about whether to accept or reject the 92-month plea offer, and the state court's rejection of his claim constituted an unreasonable

application of clearly established federal law.  Id. at 11 & 13;
see 28 U.S.C. § 2254(d)(1).

A claim of ineffective assistance of counsel, requires the
petitioner to prove that counsel's performance fell below an
objective standard of reasonableness and that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  Bell v. Cone,
535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91
(2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987).
Claims of ineffective assistance of counsel in the plea bargaining
context are governed by this two-part test.  Missouri v. Frye, 132
S.Ct. 1399, 1405-06 (2012).

To prove deficiency of performance, petitioner must show that
counsel's representation fell below an objective standard of
reasonableness.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012)
(internal quotations omitted).  "[C]ounsel should be 'strongly
presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional
judgment.'" Burt, 134 S.Ct. at 17 (quoting Strickland, 466 U.S. at
690); Cullen, 131 S.Ct. at 1403.  When a state prisoner asks a
federal habeas court to set aside a conviction due to ineffective
assistance of counsel, this court is required to use a doubly
deferential standard of review that gives both the state court and

the defense attorney the benefit of the doubt. <u>Burt</u>, 134 S.Ct. at 13; <u>Cullen</u>, 131 S.Ct. at 1403.

When a plea offer has been rejected because of counsel's deficient performance, the prejudice component requires a petitioner to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." <u>Frye</u>, 132 S.Ct. at 1409-10.  This requires a showing that there is a reasonable probability that, absent ineffective assistance of counsel, petitioner would have accepted the more favorable plea offer, the prosecution would have adhered to the agreement, and it would have been accepted by the trial court.  <u>Frye</u>, 132 S.Ct. at 1410-11; <u>Lafler</u>, 132 S.Ct. at 1385.

In the instant proceeding, the state post-conviction court's factual findings that (1) trial counsel discussed with petitioner the overwhelming evidence against him; (2) petitioner reviewed the police reports documenting the evidence seized; and (3) counsel strongly advised petitioner to pled guilty are not unreasonable determinations of the facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d)(2).  The post-conviction court could reasonably find trial counsel's testimony credible, and the testimony of petitioner incredible.

Similarly, the state post-conviction court's conclusion that petitioner was not prejudiced by counsel's performance is not

objectively unreasonable given trial counsel's attestation that he confronted petitioner with the "clear evidence of guilt that was laying around his apartment," and petitioner nevertheless refused to consider negotiating a guilty plea. Again, the post-conviction court's decision to credit the testimony of Attorney Susee was not unreasonable in light of the evidence presented. See 28 U.S.C. § 2254(d)(2).[2] In light of these findings of fact, petitioner has failed to demonstrate that the post-conviction court's rejection of his ineffective assistance claims is either contrary to, or an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d)(1). Accordingly, habeas relief should be denied as to grounds for relief one and two.

In grounds for relief three and four, petitioner alleges that the post-conviction and appellate courts erred in denying him relief. These grounds do not state a claim for the violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). Moreover, petitioner does not pursue the claims in his supporting memorandum. Accordingly, grounds for relief three and four should be denied summarily.

---

[2] Because I find that the post-conviction court's findings are not unreasonable under 28 U.S.C. § 2254(d)(2), I need not address the interplay between the reasonableness standard under § 2254(d)(2), and the presumption of correctness accorded state court factual findings under § 2254(e)(1). See Murray v. Schriro, 745 F.3d 984, 1000-01 (9th Cir. 2014) (declining to resolve the issue); Burt, 134 S.Ct. at 14 (same).

12 -- FINDINGS AND RECOMMENDATION

**CONCLUSION**

Based on the foregoing, petitioner's petition for writ of habeas corpus (#1) should be DENIED.  Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED.  See 28 U.S.C. § 2253(c)(2).

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 20, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due November 6, 2014.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of October, 2014.


                                   /s/ DENNIS J. HUBEL
                                   Dennis J. Hubel
                                   United States Magistrate Judge